# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**DONOVAN A. REID,**

    *Plaintiff,*

    **v.**

**LOUIS DEJOY, Postmaster General,**
**United States Postal Service**

    *Defendant.*

     \*        **Case No. 1:22-cv-01285-JRR**

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendant Postmaster General Louis DeJoy's Motion to Dismiss or, in the Alternative, for Summary Judgment.  (ECF No. 20; the "Motion.")  The court has reviewed all papers.  No hearing is necessary.  Local Rule 105. (D. Md. 2021).  For the reasons that follow, by accompanying order, the Motion will be granted.

## LEGAL STANDARDS

Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, a motion for summary judgment under Rule 56.  "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)."  *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at \*4 (D. Md. Mar. 31, 2022).  Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).  "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6)

motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 U.S. Dist. LEXIS 130420, at *8 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)).  Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Interest Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

The present case meets both requirements.  First, Reid had adequate notice that the Motion may be treated as a motion for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998) (explaining that "[b]ased upon the caption alone, [the plaintiff] was on notice that this motion might be treated as one for summary judgment").  Reid referred to the Motion in his Opposition as one for summary judgment, introduced additional allegations beyond those contained in his complaint, and requested that the court consider documentary evidence.  (ECF No. 25-1 at 2.)  As the court explained in *Snyder*, "[b]oth actions reflect [] subjective awareness that the motion could be construed as a motion for summary judgment."  2022 WL 980395, at *4.  Second, Reid was afforded a reasonable opportunity for discovery in the underlying administrative proceeding, does not argue additional discovery is

necessary, and did not submit a Rule 56(d) affidavit. *See Harrods*, 302 F.3d at 244 (explaining that "[i]f a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'") (quoting *Evans*, 80 F.3d at 961); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) (explaining that the failure to file an affidavit indicating a need for discovery "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."). Accordingly, the court will treat the Motion as one for summary judgment.

### Federal Rule of Civil Procedure 56

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp.

2d 373, 375 (D. Md. 2001) (citations omitted).  Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Further, in undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  Critically, on a Rule 56 motion, the court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014).

## BACKGROUND[1]

*Pro se* Plaintiff Donovan Reid filed this action against Defendant Louis DeJoy, in his capacity as the Postmaster General for the United States Postal Service ("USPS").  (ECF No. 1.) Reid alleges that Defendant discriminated and retaliated against him during his employment at USPS in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*  (ECF No. 1 at 4.)

On October 27, 2018, Reid began working at USPS as a probationary Postal Support Employee Mail Processing Clerk in the Baltimore Processing and Distribution Center. (AR00071.)  Antonio Pickford was Reid's first-line supervisor and supervisor of the Distribution

---

[1] Unless otherwise stated, the facts in the Background Section are undisputed and developed from the Complaint; the administrative record of Plaintiff's EEOC Complaint ("AR"); Defendant's Motion; and Plaintiff's Response thereto.

Operations.  (AR00071; AR00103.)  Kiwana Samuel was Pickford's supervisor and manager of the Distribution Operations.  (AR00103.)  Reid also worked with co-workers, Christopher Moore and Avron Swird.  (ECF No. 25-6; ECF No. 25-7.)

The facts of this case arise from incidents that occurred in December 2018 and January 2019.  (AR00054.)  On December 23, 2018, Reid reported to postal police that Moore spat in his coffee and harassed him on the work floor while on break.  (ECF No. 25-6.)  After management became aware of the incident, an investigation followed, and Moore was moved to another floor and instructed not to interact with Reid.  (AR00125; AR00126.)  Despite Moore moving to another floor, Reid continued to see him.  (AR00073.)  After Moore learned of Reid's report to postal police, Moore told Reid: "I apologize nigga."  *Id.*  Reid did not report the racial slur incident until after his termination.  (AR00078.)

Subsequently, on December 25, 2018, Reid reported to postal police that an individual punched him in the leg.  (Pl. Resp. Ex. 7, PPO Report 2.)  The individual was identified as Reid's co-worker, Swird.  (AR00134.)  Postal police informed Samuel about the incident and an investigation was conducted.  *Id.*  The investigation revealed that Swird had difficulty hearing and was trying to get Reid's attention.  *Id.*

On January 11, 2019, Reid alleges that his supervisor, Pickford, harassed him and made inappropriate remarks and gestures.  (AR00081.)  Specifically, Reid alleges that Pickford walked by an area where he was working, "pointed to his butt and said 'put it right here.'"  *Id.*  On the same day, Reid alleges that Pickford referred to him as "[D]onovan dick small."  *Id.*  While Pickford denies that any such remarks were made to Reid (AR 00110), it is undisputed that Reid did not report the incident until after his employment termination.  (AR00083; AR00110.)

On January 12, 2019, Reid's employment was terminated during his probationary period for unsatisfactory performance.  (AR00102.)   In Reid's first 30 days, he was performing satisfactorily in every category.  (AR 00153.)  As of the 60-day evaluation, Reid was performing unsatisfactorily in three categories: work quality, work relations, and personal conduct.  (AR 00153.)   On January 12, 2019, Reid received his 80-day evaluation four days early, and his performance ratings had not improved.  *Id.*  Reid's supervisor, Pickford, did not recommend Reid for retention.  *Id.*  On January 12, 2019, Reid was terminated "for unacceptable work performance during [his] probationary period."  (AR 00102.)

On April 16, 2019, Reid filed an Equal Employment Opportunity ("EEO") Complaint of Discrimination in the Postal Service. (AR00006.)  An investigative report was prepared by an EEO investigator and submitted to USPS on June 26, 2019.  (AR00050.)  USPS provided Reid with a copy of the report and a notice of his right to request a hearing before an EEOC Administrative Judge.  (AR00001.)  Reid requested a hearing (AR00003) and USPS submitted a motion for a decision without a hearing.  (ECF No. 20-7.)  On December 15, 2020, the Administrative Judge issued a decision without holding a hearing and judgment was entered in favor of USPS.  *Id.*  On December 22, 2020, a Final Agency Decision implementing the decision of the Administrative Judge was issued.  (ECF No. 20-8.)  Reid appealed and, on January 12, 2021, EEOC's Office of Federal Operations affirmed the Final Agency Decision.  (ECF No. 20-9.)  On February 15, 2022, Reid requested reconsideration, which was denied; and on April 27, 2022, the EEOC issued Reid a Notice of Right to Sue letter.  (ECF No. 1-2.)

On May 27, 2022, Reid commenced this action by filing a form complaint for employment discrimination.  (ECF No. 1.)  He alleges various violations of Title VII of the Civil Rights Act of 1964.  *Id.*  Reid claims as follows: (1) discriminatory termination of his employment; (2) unequal

terms and conditions of his employment; and (3) retaliation.  *Id.*  The prayer for relief seeks: (1) front and back pay; and (2) compensatory and punitive damages.  (ECF No. 1 at 7.)

## ANALYSIS

As an initial matter, the court is ever-mindful that "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792, 2017 U.S. Dist. LEXIS 18223, *6 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)). "Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented." *Id.*

## I.     **Title VII Principles / McDonnell Douglas Framework**

"Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel*, 895 F.3d 317, 326-27 (4th Cir. 2018).

"A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022).  "To satisfy ordinary principles of proof, [a plaintiff] must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996). "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory

attitude and that bear directly on the contested employment decision.'" *Cole v. Fam. Dollar Stores of Md., Inc.*, 811 Fed. Appx. 168, 175 (4th Cir. 2020) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999)).

Absent direct evidence, a plaintiff must establish a *prima facie* case pursuant to the *McDonnell Douglas* standard. *McDonnell Douglas Corp.*, 411 U.S. at 802. Pursuant to the *McDonnell Douglas* standard, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). The "[e]stablishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 254. "To establish a 'presumption' is to say that a finding of the predicate fact (here, the *prima facie* case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful discrimination)." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (quoting 1 D. Louisell & C. Mueller, Federal Evidence § 67, p. 536 (1977)).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for [the employment action]." *McDonnell Douglas Corp.*, 411 U.S. at 802. "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 254-55). "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citations omitted). "[A]lthough the *McDonnell Douglas* presumption shifts

the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *St. Mary's Honor Center*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 253).

"An employer is entitled to summary judgment if the plaintiff fails to establish a *prima facie* case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995). Further, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 943 (4th Cir. 1992)).

## II.   Retaliation

To establish a *prima facie* case of retaliation, Reid must demonstrate that (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link exists between the protected activity and the adverse employment action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).

"Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 Fed. Appx. 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)). It "includes an employee's opposition to what he or she believes is an unlawful employment practice." *Bowman v. Balt. City Bd. of School Commissioners*, 173 F. Supp 3d 242, 248 (D. Md. 2016). For example, "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998). While "[c]omplaints about management activities that would not constitute unlawful discrimination do not count as protected activity,"

9

*Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018), "where the employer understood or should have understood that the plaintiff opposed an unlawful practice, that opposition is protected activity." *Bowman*, 173 F. Supp. 3d at 238 (citing *Burgess v. Bowen*, 466 Fed. Appx. 272, 282 (4th Cir.2012)).

Defendant argues that Reid's retaliation claim fails because Reid does not allege that he engaged in a protected activity.  (ECF No. 20 at 11.)  Reid asserts he was retaliated against because of his race.   Liberally construing Reid's complaint, he contends that Defendant unlawfully retaliated against him by terminating his employment in response to his complaints about his co-workers.   Specifically, he argues that he engaged in protected, oppositional activity to discriminatory conduct when he reported the two incidents involving his co-workers.[2]  (ECF No. 25-1 at 9-10.)

In *Bowman*, the school teacher plaintiff initially complained about the size of her classroom and did not allege racially discriminatory conduct.  173 F. Supp. 3d 242, 248 (D. Md. 2016).  The *Bowman* court focused on whether the plaintiff engaged in a protected activity and explained:

> The Fourth Circuit noted that while individual acts may be scrutinized to determine their nature, purpose, and nexus to the alleged objective, the plaintiff's conduct must be examined as a whole. This inquiry first looks to whether the employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination. If this first question is answered in the affirmative, then a court considers whether this communicated belief concerns a practice that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful.

---

[2] In his Response, Reid argues: (1) "I opposed discrimination in protected activity when I confronted SDO Antonio Pickford & made 2 reports to Postal Police about Moore before the end of my 60th evaluation on December 27th, 2018, and when I reported to Antonio Pickford again about Moore still being around me" and (2) "I opposed discrimination in protected activity when I made a report to Postal Police before my 60-day including SDO Antonio, and MDO Kiwana about Avron Swird punching me and when the supervisor asked if I wanted to go home, I did." (ECF No. 25-1 at 9-10.)

173 F. Supp. 3d 242, 248 (D. Md. 2016) (internal citations omitted); *see Chang Lim*, 310 F. Supp. 3d at 604 (holding that "to qualify as protected activity, an employee's complaints must still communicate 'a belief that the employer has engaged in . . . a form of employment discrimination' based on a protected class") (quoting *Crawford v. Metrop. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009)).  The *Bowman* court found that the plaintiff's initial complaints were "not sufficient to allege that [the plaintiff] communicated her belief to the [defendant] that racially discriminatory practices were occurring at [the school]" because the plaintiff's "initial complaints related only to general unfair treatment resulting from the large classroom size."  173 F. Supp. 3d at 249.  However, the *Bowman* plaintiff further alleged that she specifically complained of discriminatory treatment in regard to classroom size by explicitly stating that it was discrimination and referenced a comparator Caucasian teacher.  *Id.*  The *Bowman* court found that, with this additional context, the school's principal "reasonably should have been aware that [the plaintiff's] complaint noted a distinction in treatment between" a Caucasian teacher and an African American teacher.  *Id.*  The court therefore held that the plaintiff adequately alleged a protected activity.  *Id.*

The Fourth Circuit has "consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim."  *Roberts*, 998 F.3d at 124.  As the court explained in *McIver v. Bridgestone Americas, Inc.*:

> Knowledge of a protected activity means not only knowledge that the activity occurred, but also knowledge that the employee engaged in the protected activity because the employee had a reasonable belief that a Title VII violation occurred. An employee's belief that a Title VII violation has occurred may be completely reasonable, but if she fails to tie complaints about workplace conduct to her protected status, the employer could not have retaliated for engaging in a protected activity. Without notice that an employee is complaining about discrimination based on their protected status, an employer has no means to distinguish between protected conduct and frivolous complaints about workplace disagreements unprotected by the law.

42 F.4th 398, 411-12 (4th Cir. 2022) (finding that the plaintiff's "lack of reasonable belief that her tampering allegations related to a Title VII violation and her failure to put [the defendant] on notice that she believed the tampering was on account of her race causes [the plaintiff's retaliation claim] to fail").

Here, the precise issue is whether Reid communicated to USPS a belief that his co-workers engaged in a form of employment discrimination based on Reid's protected class as a Black man. Reid asserts that he opposed discrimination when he reported the coffee-spitting incident involving Moore and the leg-punching incident involving Swird.  (ECF No. 25-1 at 9-10.)  While Reid reported both incidents, he does not set forth any evidence that such reports communicated to his employer that he believed those incidents involved racially discriminatory conduct.  Indeed, the postal police reports regarding the two incidents do not bear any indication that Reid believed the incidents were race-based.  Accordingly, Reid's general complaints in the postal police reports about mistreatment are not protected activity as defined by Title VII.  *See Bowman*, *supra*.

While Reid argues he engaged in a protected activity, he cannot maintain a retaliation claim because the record does not support a finding of his reasonable belief that either incident related to a Title VII violation.  The absence of such a belief is further supported by the undisputed fact that he failed to communicate to his employer that he believed either incident occurred because of his race.  *See McIver*, *supra*.  Without notice that Reid complained because he felt he had been subjected to race-based discrimination, USPS had no way to distinguish between general complaints about workplace misconduct and protected conduct.  *See McIver*, *supra*.  To the extent Reid's employer knew about the general complaints regarding Moore and Swird, Defendant investigated the incidents.  "[T]he law does not require employers to look behind every complaint to determine the employee's motive."  *McIver*, 42 F.4th at 412.

Reid fails to generate a dispute of material fact regarding the nature and basis of his complaint regarding Moore and Swird and fails to establish a *prima facie* case of retaliation in violation of Title VII. Accordingly, Defendant is entitled to judgment as a matter of law as to the retaliation claim.

## III.    <u>Race Discrimination</u>

Reid alleges he was wrongfully terminated and was subject to unequal terms and conditions of employment based on his race. Defendant contends that Reid fails to allege facts to support these contentions. (ECF No. 20 at 8.)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). "Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

There is no dispute that Reid establishes elements one and three. Reid is a member of a protected class as a Black man and suffered adverse employment action when he was terminated. (ECF No. 1 at 5.) Therefore, the court's analysis will focus on elements two and four.

### A.    <u>Satisfactory Job Performance</u>

Defendant argues that Reid does not assert, and cannot demonstrate, that his job performance was satisfactory. (ECF No. 20 at 10.)

In analyzing satisfactory job performance, it is the "perception of the decision maker which

is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). The plaintiff is not required "to show that he was a perfect or model employee." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). "Rather, a plaintiff must show only that he was qualified for the job and that he was meeting his employer's legitimate expectations." *Id.*

Here, while Reid alleges that he was terminated wrongfully, he fails to generate a dispute as to whether he was qualified for the job or met his employer's expectations. Indeed, as set forth earlier, it is undisputed that: he was terminated "for unacceptable work performance during [his] probationary period." (AR 00102); and in his EEO investigation affidavit when asked what facts he disputes in the Notice of Termination, he answered "N/A." (AR 00085); he worked at the job for fewer than 90 days, and his 60-day evaluation indicated that he was not meeting his employer's expectations. (AR 00153); Reid's work was rated "Unacceptable" in three of six categories, including work quality, work relations, and personal conduct. *Id.*; Reid's performance did not improve by his 80-day evaluation and his supervisor did not recommend him to stay with the agency. *Id.*; Reid was terminated on January 12, 2019 "for unacceptable work performance during [his] probationary period." (AR 00102.) Accordingly, Reid has failed to establish the second element of a *prima facie* case for race discrimination. While this alone entitles Defendant to judgment as a matter of law on Reid's claim of race discrimination, the court will address the remaining argument.

B. **Different Treatment / Appropriate Comparator**

In addition to arguing that Reid fails to establish satisfactory job performance, Defendant argues that Reid neither alleges nor generates a dispute of fact that he was treated differently than any similarly situated employee not in a protected class. (ECF No. 20 at 10.)

"[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (quoting *Haywood v. Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010)).

Reid has not produced evidence of a comparator who dealt with the same supervisor, was subject to the same standards, or engaged in the same conduct. In his EEO investigation affidavit, when asked whether he was aware of any other employees under the same management chain who had been issued a Notice of Termination or been disciplined for the same or similar conduct, Reid answered "No." (AR 00090.) Additionally, when asked whether he was aware of any other employees under the same management chain who had not been an issued a Notice of Termination or disciplined for the same or similar conduct, Reid also answered "No." *Id.* Accordingly, to the extent Reid alleges he was discriminated against by unequal terms and conditions of employment, he fails to allege the requisite facts to state a *prima facie* claim of race-based discrimination, and likewise fails to generate a dispute of material fact on these elements.

Accordingly, Defendant is entitled to judgment as a matter of law on Reid's claim of race-based discrimination in employment.

## IV.    **Hostile Work Environment**

The court construes Reid's Complaint to allege that Defendant subjected him to a hostile work environment in violation of Title VII because of his race and sex.[3]

---

[3] While Reid did not check the box on his form Complaint that Defendant discriminated against him based on his sex, the court construes *pro se* pleadings liberally; accordingly, the court will consider Reid's allegation that sexual harassment led to a hostile work environment.

"To demonstrate sexual harassment and/or a racially hostile work environment, a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011). While the elements are the same for sexual harassment and racially hostile work environment, the court will analyze the two claims separately.

### A.   Sexual Harassment

Reid's sexual harassment claim is based on the alleged inappropriate remarks and gestures by his supervisor. Specifically, Reid alleges that Pickford made two inappropriate remarks or gestures: (1) Pickford walked by Reid and "pointed to his butt and said, 'put it right here'"; and (2) Pickford referred to Reid as "[D]onovan small dick." (ECF No. 25-1 at 5.)

Defendant argues that Reid's allegations fail to satisfy the "severe or pervasive" standard for a hostile work environment. (ECF No. 20 at 12.) While the parties dispute whether such remarks were made by Pickford, even if such remarks were made, Reid fails to establish a genuine dispute of material fact as to the second and third elements: that the alleged harassment was because of gender and that the conduct was so severe or pervasive as to alter his working conditions.

### i.   *Gender-Based*

The second element for a sexual harassment claim requires a plaintiff to show that the unwelcome conduct is based on the plaintiff's sex. *Okoli*, 648 F.3d at 220. "An employee is harassed or otherwise discriminated against 'because of' his or her sex if, 'but-for' the employee's sex, he or she would not have been the victim of the discrimination." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (citing *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d

138, 142 (4th Cir. 1996)).  "There is a significant distinction between harassment that is sexual in content and harassment that is sexually motivated, and Title VII is only concerned with the latter." *English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 840 (E.D. Va. 2002).  "In the case of same-sex sexual workplace harassment, the plaintiff must demonstrate that the harassing conduct was not merely 'tinged with offensive sexual connotations,' but actually constituted discrimination because of sex."  *Id.* (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79-80 (1998)).  The evidence set forth by a plaintiff must demonstrate "that a reasonable jury could see the hostility as a product of gender animus rather than the kind of personality conflict that pervades many a workplace."  *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008).

Reid has not provided any evidence that Pickford made inappropriate remarks or gestures because of Reid's sex.  *See Eckert v. Quality Associates*, No. WDQ-14-1815, 2015 WL 5083329, at *5 (D. Md. Aug. 26, 2015) (dismissing the plaintiff's sexual harassment claim because the plaintiff "must plausibly allege that the offensive conduct occurred because of her sex").  Further, Reid provides no evidence that Pickford's actions were motivated by gender animus.  *See Ziskie*, *supra*.  Accordingly, Reid fails to generate a dispute of fact that the alleged unwelcome harassment was based on his sex.  For purposes of completeness, the court will address the remaining arguments.

### ii.   *Severe or Pervasive*

"The third element of a hostile environment claim requires that the offending conduct be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Strothers v. City of Laurel*, 895 F.3d 317, 331 (4th Cir. 2018) (quoting *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 333 (4th Cir. 2003)).  Generally, "viable hostile work environment claims [] involve repeated conduct . . . . however, an 'isolated

incident[]' of harassment can 'amount to discriminatory changes in the terms and conditions of employment,' if that incident is 'extremely serious.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor—*e.g.*, 'a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.'" *Id.* at 278 (quoting *Rodgers v. W.–S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir.1993)). Further, "[t]he severe or pervasive conduct which gives rise to an abusive work environment must be both objectively and subjectively 'hostile' and 'abusive.'" *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022).

The subjective component of the severity/pervasiveness element requires the employee to personally "believe that the conduct rises to the level of a hostile environment"; the objective component requires the employee to "reasonably believe that the conduct rises to the level of a hostile environment." *Strothers*, 895 F.3d at 331. The objective inquiry focuses on "whether the harassing conduct was objectively 'severe or pervasive,'" in light of "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" *Id.* at 315 (quoting *Faragher*, 524 U.S. at 788). Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

The Supreme Court's decision in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S.

75 (1998), is instructive:

> And there is another requirement that prevents Title VII from
> expanding into a general civility code: As we emphasized in *Meritor*
> and *Harris*, the statute does not reach genuine but innocuous
> differences in the ways men and women routinely interact with
> members of the same sex and of the opposite sex. The prohibition
> of harassment on the basis of sex requires neither asexuality nor
> androgyny in the workplace; it forbids only behavior so objectively
> offensive as to alter the "conditions" of the victim's employment.
> "Conduct that is not severe or pervasive enough to create an
> objectively hostile or abusive work environment—an environment
> that a reasonable person would find hostile or abusive—is beyond
> Title VII's purview." We have always regarded that requirement as
> crucial, and as sufficient to ensure that courts and juries do not
> mistake ordinary socializing in the workplace—such as male-on-
> male horseplay or intersexual flirtation—for discriminatory
> "conditions of employment."
>
> We have emphasized, moreover, that the objective severity of
> harassment should be judged from the perspective of a reasonable
> person in the plaintiff's position, considering "all the
> circumstances." In same-sex (as in all) harassment cases, that
> inquiry requires careful consideration of the social context in which
> particular behavior occurs and is experienced by its target. A
> professional football player's working environment is not severely
> or pervasively abusive, for example, if the coach smacks him on the
> buttocks as he heads onto the field—even if the same behavior
> would reasonably be experienced as abusive by the coach's
> secretary (male or female) back at the office. The real social impact
> of workplace behavior often depends on a constellation of
> surrounding circumstances, expectations, and relationships which
> are not fully captured by a simple recitation of the words used or the
> physical acts performed. Common sense, and an appropriate
> sensitivity to social context, will enable courts and juries to
> distinguish between simple teasing or roughhousing among
> members of the same sex, and conduct which a reasonable person in
> the plaintiff's position would find severely hostile or abusive.

523 U.S. at 81-82 (internal citations omitted).

Even assuming Reid's allegations as to Pickford's remarks are true, Reid fails to proffer

evidence that Pickford's inappropriate remarks or gestures, when considered together, are severe

or pervasive enough to rise to the level of a hostile work environment.  Reid maintains that he refused the sexual demands by ignoring them (ECF No. 25-1 at 13) and urges that, although he did not report the remarks until after his termination (AR 00082), he was terminated the day following the subject remarks; therefore, Reid argues, he was unable to make a report before he was terminated.  However, even if Reid subjectively believed Pickford's behavior rose to the level of a hostile environment, he fails to satisfy the objective inquiry in light of the surrounding circumstances.  The record before the court, even when viewed in the light most favorable to Reid, fails as a matter of law to establish discriminatory conditions in employment.  The inappropriate remarks and gestures by Pickford, while sexual in nature and content, amount to an isolated incident of offhand comments.  *See Faragher*, *supra.*  Further, Reid has not provided any evidence that Pickford's behavior unreasonably interfered with his work performance.  Reid fails to set forth any facts or evidence that would demonstrate discriminatory conditions in employment.  *See Oncale*, *supra*.  Accordingly, Defendant is entitled judgment as a matter of law, as Reid cannot establish a *prima facie* case for sexual harassment.

> ### B.    Racially Hostile Work Environment

Reid's hostile work environment claim is also based on a co-worker calling him a racial slur. (ECF No. 1 at 6.)  Defendant argues that "this one-time incident does not rise to the level of a hostile work environment."  (ECF No. 20 at 13.)

"When racial animus in the workplace creates a hostile work environment, requiring an affected employee to work in it amounts to intentional racial discrimination by the employer and is actionable under Title VII."  *McIver*, 42 F.4th at 407.  As discussed above, to establish a *prima facie* case for a "racially hostile work environment, a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently

severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).

There is no dispute that the sort of racial slur used here "constitute[s] the sort of direct proof of discrimination necessary to satisfy the second element of a hostile work environment for purposes of summary judgment." *Brown*, 2022 WL 17336572, at *7. Accordingly, the court's analysis will focus on the first, third, and fourth elements.

### i.   Unwelcome Conduct

To succeed on a hostile work environment claim, Reid must first show that there is unwelcome conduct. *McIver*, 42 F.4th at 407. "Conduct is 'unwelcome' when it continues after the employee sufficiently communicates that it is unwelcome." *Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 557–58 (D. Md. 2006). Plaintiff's "own behavior is relevant in deciding 'unwelcomeness.'" *Id.* at 558. "[A]n employee can demonstrate that certain conduct is unwelcome simply by voicing [his] objection to the alleged harasser or to the employer." *Strothers*, 895 F.3d 317, 328-29 (4th Cir. 2018); *see also E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008) (holding that "[a] reasonable jury could determine that the religious harassment here was unwelcome" when employee "complained, both verbally and in writing, about the alleged harassment to his supervisors").

Reid does not allege that he communicated to his co-worker, supervisors, or anyone for that matter, that the conduct was unwelcome; and he offers no evidence to generate a factual dispute on this important consideration. Indeed, there is no dispute that Reid did not report his co-worker calling him a racial slur until after his termination. (AR00078.) Accordingly, Reid fails to create a genuine dispute of material fact that his co-worker's actions were unwelcome. Even

had Reid raised such a factual dispute, the claim would still fail for the reasons stated below.  *See*
Section IV.B.iii-iv, *infra.*

>    *ii.*      ***Severe and Pervasive***

To prevail on a race-based hostile work environment claim, the requisite unwelcome
conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's
employment and create an abusive working environment." *Ocheltree*, 335 F.3d at 333.  Further,
as in a sex-based hostile work environment claim, a plaintiff must fulfill the subjective and
objective components described above, which is to say "the employee must both personally and
reasonably believe that the conduct rises to the level of a hostile environment." *Id.*   The court
must consider "'all the circumstances,' including 'the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work performance.'" *Sunbelt Rentals, Inc.*,
521 F.3d at 315 (quoting *Harris*, 510 U.S. at 23).  "[I]n order to be actionable, the harassing
'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of
employment.'" *Id.* at 315 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).
Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)
will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*,
524 U.S. at 788.  "The bar for demonstrating conduct was objectively severe or pervasive is a high
one." *Brown*, 2022 WL 17336572, at *9.

It is axiomatic that "[f]ar more than a 'mere offensive utterance,' the word 'nigger' is pure
anathema to African–Americans." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir.
2001).  "Perhaps no single act can more quickly alter the conditions of employment and create an
abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by

a supervisor in the presence of his subordinates." *Id.* (quoting *Rodgers v. Western–Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir.1993)). "The task [] on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion." *Sunbelt Rentals, Inc.*, 521 F.3d at 316. The holding of *Boyer-Liberto v. Fontainebleau Corp.* further elucidates the matter:

> To be sure, viable hostile work environment claims often involve repeated conduct. That is because, "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." For example, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." The same goes for "simple teasing [and] offhand comments." Importantly, however, an "isolated incident[ ]" of harassment can "amount to discriminatory changes in the terms and conditions of employment," if that incident is "extremely serious."

786 F.3d 264, 278 (4th Cir. 2015) (internal citations omitted). Further, "[t]he status of the harasser is also a significant factor to be considered; harassment by a supervisor tends to be more serious, while harassment by a co-equal is less serious." *McIver*, 42 F.4th at 408.

In *Spriggs v. Diamond Auto Glass*, the plaintiff "was exposed on a 'continuous daily' basis to [his supervisor's] racist comments concerning African Americans in general." 242 F.3d 179, 184 (4th Cir. 2001). Specifically, the plaintiff's supervisor "habitually called [the plaintiff] a 'monkey,' 'dumb monkey' and 'nigger.'" *Id.* at 182. The Fourth Circuit concluded that the supervisor's "frequent and highly repugnant insults were sufficiently severe or pervasive (or both) to cause a person of ordinary sensibilities to perceive that the work atmosphere at the Forestville store was racially hostile." *Id.* at 185. There was also evidence before the court that the plaintiff complained multiple times to his supervisors about the use of the racial slurs and, therefore, the court concluded that the plaintiff considered his supervisor's conduct abusive. *Id.* Further, in *Spriggs*, the plaintiff generated evidence that his supervisor's behavior negatively affected his

23

emotional health and self-esteem, and interfered with his ability to work.   *Id.* at 185-86. Accordingly, the *Spriggs* court found that "a reasonable jury examining the totality of the circumstances could find . . . that a hostile work environment confronted Spriggs." *Id.* at 186.

To be sure, the racial remark is reprehensible, but this case differs markedly from *Spriggs*. Here, Moore was a co-worker and not Reid's supervisor. *See McIver*, 42 F.4th at 408 ("harassment by a co-equal is less serious").   Additionally, while the court means not to excuse or diminish the incident, it occurred one time when Moore was apologizing to Reid for spitting in his coffee. (AR00077.)   Therefore, this incident is more appropriately categorized as "episodic," not "continuous and concerted." *Faragher*, 524 U.S. at 787 n. 1.  Here, Reid has not provided evidence that the use of a racial slur was severe and pervasive enough to rise to the level of a hostile work environment.   Reid fails to establish "instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimate,' thereby creating an abusive atmosphere." *Sunbelt Rentals, Inc.*, 521 F.3d at 316.

Reid also does not contend that the perceived harassment interfered with his work.  As the Supreme Court recognized in *Meritor*, "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' would not affect the conditions of employment to sufficiently significant degree to violate Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1972)).   Accordingly, even construing Reid's allegations as true, this one instance fails as a matter of law to rise to the level of severe or pervasive for a hostile work environment.  Further, even if Reid overcame this defect, his claim would still fail because, as set forth below, there is no basis for imposing liability on Reid's employer.

        **iii.**       ***Basis for Imposing Liability***

Lastly, a plaintiff "must establish a 'basis for imposing liability' on [the defendant employer] for the sex-or race-based harassment." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 422 (4th Cir. 2014). "If the harasser is a co-worker, then the employee must show that the employer was 'negligent in controlling working conditions'—that is, the employer 'knew or should have known about the harassment and failed to take effective action to stop it.'" *Strothers*, 895 F.3d at 332-33 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). If the employer knew or should have known about the harassment, the employer must "respond with remedial action reasonably calculated to end the harassment." *Sunbelt Rentals*, 521 F.3d at 319. "[R]emedial action that effectively stops the harassment will be deemed adequate as a matter of law." *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 670 (4th Cir. 2011). "[S]o long as discipline is reasonably calculated to end the behavior, the exact disciplinary actions lie within [the employer's] discretion." *Bazemore v. Best Buy*, 957 F.3d 195, 202 (4th Cir. 2020).

There is no dispute that Reid did not report that Moore called him a racial slur until after his termination. (AR 00078.) Therefore, Reid cannot demonstrate that Defendant knew or could have known of the conduct during Reid's employment. As a result, Defendant had no opportunity to "take prompt remedial action reasonably calculated to end the harassment." *Amirmokri*, 60 F.3d at 1131. Accordingly, Moore's conduct is not imputable to USPS, and Defendant is entitled to judgment as a matter of law on Reid's race-based hostile work environment claim.

### C.    *Quid Pro Quo* **Sexual Harassment**

In his Opposition, Reid raises for the first time a *quid pro quo* sexual harassment claim. (ECF No. 25-1 at 13.) Defendant argues that Reid's *quid pro quo* claim fails because he failed to exhaust the claim at the administrative level. (ECF No. 26 at 9.)

"Before a plaintiff has standing to file suit under Title VII, she must exhaust her

administrative remedies by filing a charge with the EEOC." *Davenport v. Maryland*, 38 F. Supp. 3d 679, 687 (D. Md. 2014). "Only those discrimination claims stated in the initial charge, those reasonably related to the initial charge, and those developed by reasonable investigation of the initial charge may be maintained in a subsequent Title VII lawsuit." *Id.* "[B]ecause *quid pro quo* requires proof of an element that hostile work environment does not (*i.e. quid pro quo*), a *quid pro quo* claim is not reasonably related to and does not reasonably follow from an investigation of a charge of hostile work environment." *Id.; see Moser v. MCC Outdoor, L.L.C.*, 256 Fed. Appx. 634, 642 (4th Cir. 2007) (holding that "to establish *quid pro quo* liability, a plaintiff must prove that a 'tangible employment action resulted from a refusal to submit to a supervisor's sexual demands'") (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998)).

Reid failed to raise a *quid pro quo* sexual harassment claim in his EEO complaint. Accordingly, Reid has failed to exhaust his administrative remedies as to a *quid pro quo* sexual harassment claim and it must be dismissed. However, even if the court considered Reid's *quid pro quo* claim, it would still fail for the reasons that follow.

"[T]o establish *quid pro quo* liability, a plaintiff must prove that a 'tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'" *Moser*, 256 Fed. Appx. at 642 (quoting *Burlington Indus., Inc.*, 524 U.S. at 753). Reid fails to generate any evidence on which a reasonable jury could conclude that Pickford conditioned, explicitly or implicitly, an employment action on Reid's acceptance or rejection of sexual advances. To the contrary, Reid alleges that he was terminated because of his report to the postal police about the incidents with his co-workers; he does not contend that his employment termination is in any manner related to his acceptance or rejection of the alleged sexual advances. (ECF No. 25-1 at 13-14.) Accordingly, even if the court found that Reid exhausted his administrative remedies, Defendant would still be

entitled to judgment as a matter of law as to Reid's *quid pro quo* claim.

## V.   <u>Legitimate Non-Discriminatory Reason</u>

Defendant has provided legitimate, nondiscriminatory reasons for terminating Reid's employment – Reid "was terminated at the end of his probationary period because his work was rated unacceptable for three of the six categories on which he was evaluated." *See Evans v. Techs. Application & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (explaining that poor job performance is "widely recognized as a valid, nondiscriminatory basis for any adverse employment decision"). Reid fails to provide any evidence on which a reasonable jury could conclude that Defendant's proffered reasons for his termination are a false pretext concealing discrimination or retaliation. Therefore, even had Reid established a *prima case* for discrimination on any basis, Defendant would still be entitled to judgment as a matter of law because Reid has failed to generate any evidence on which a reasonable jury could conclude that the proffered reason for his termination was a pretext for discrimination. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 320 (4th Cir. 2005) (affirming summary judgment in favor of employer on discrimination claim where the plaintiff failed to produce "sufficient evidence of pretext to 'avert summary judgment.'") (quoting *Hill v. Lockheed Martin Logistics Mgmt. Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)).

### CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment (ECF No. 20), is **GRANTED**.

/S/

_____
Julie R. Rubin
United States District Judge

May 10, 2023

27